Filed 12/11/20  In re T.G. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re T.G., a Person Coming Under the Juvenile Court Law. | C091336 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES, | (Super. Ct. No. JD240060) |
| Plaintiff and Respondent, | |
| v. | |
| K.B., | |
| Defendant and Appellant. | |

Appellant K.B., mother of the minor, appeals from the juvenile court's jurisdiction and dispositional orders.  (Welf. & Inst. Code, §§ 360, 361, 395.)[1]  She contends there was insufficient evidence to support the true finding that was the sole basis for

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

jurisdiction related to mother. She further contends the minor's removal was unsupported by the evidence.

We agree with mother's first contention and reverse the contested jurisdictional finding, but affirm the minor's removal.

FACTUAL AND PROCEDURAL BACKGROUND

On August 26, 2019, Sacramento County Department of Child, Family and Adult Services (the Department) filed a petition pursuant to section 300, subdivisions (b) and (j), on behalf of the then three-week-old minor, T.G. The petition alleged the minor was at risk of serious physical harm or abuse due to father's ongoing anger management problem and mother's inability to protect the minor from father. The petition further alleged mother had failed to protect the minor's two half siblings from *their* father's (J.T.) substance abuse and neglect and had failed to reunify with those half siblings.[2] The minor was placed into protective custody the following day and formally detained on August 30, 2019.

The Department filed an amended petition that removed the inability to protect allegation as to mother and replaced it with the allegation that mother's untreated mental illnesses and poor judgment placed the minor at substantial risk of physical harm. Specifically, the petition alleged that mother suffered from post-traumatic stress disorder (PTSD) and depression, which impaired her judgment and ability to provide adequate care and protection for the minor.

_____

[2] Mother had been the noncustodial parent of the half siblings. The social worker in that case stated mother had known one of the half siblings was being sexually abused in J.T.'s home but left the child in his care. Mother denied knowing about the sexual abuse but admitted she knew about the condition of J.T.'s home, his drug use, his physical abuse of the children, and the ongoing domestic violence in J.T.'s home between J.T. and his girlfriend. )

2

This allegation was based on a 2017 mental health assessment, performed by licensed clinical social worker Augusta Hunt. Hunt reported that mother had experienced a traumatic event at age 11 and still had feelings of sadness, fatigue, low motivation, high irritability, and regular and horrifying nightmares. Hunt concluded that mother was experiencing clinically significant symptoms of PTSD and depression, which helped explain her poor motivation, low self-esteem, and feelings of hopelessness. It was recommended that mother participate in a psychiatric medication evaluation, as well as counseling, but mother had not followed through with that recommendation.

The social worker's reports also explained that mother had been in two prior abusive marriages, including her first marriage with J.T. Then mother left her second husband and became involved with father soon after his release from prison. He had suffered a conviction in 2013 for punching the mother of his child in the face multiple times and then grabbing a knife, holding it to her throat, and threatening her, all in the presence of his toddler child.

After his release from prison, father threatened his sister, who is the guardian of the minor's sibling, by physically pulling the child away from her and telling her he would "fucking kill" her. At his next visit, he cursed the guardian and trying to rip the child and stroller away from her. The guardian stated father has always had anger issues and that mother had told her she was also afraid of father's anger and afraid that he might hurt her. The guardian told of one instance, which she described as one of many similar instances of violence, where father restrained the guardian's son while swiping at her with a butcher knife.

Father also had prior convictions in 2002 for battery on a former spouse and in 2003 and 2006 for sex with a minor more than three years his junior. Although mother had claimed to be "staying away" from father in September 2017, the social worker in the half siblings' case observed that she continued to share all money, food, and shelter with father. Mother admitted that if she should secure housing, she was very likely going to

3

bring him into her home. Mother also admitted to the social worker in the half siblings' case that she and father had a tumultuous relationship and that father continued to use drugs.

Mother participated in services in 2016 in connection with the half siblings' case but failed to benefit from services and, according the social worker, elected to leave with father instead of reunifying with the half siblings.

The minor was born in August 2019, after mother concealed her pregnancy from the Department. Several meetings occurred between the Department and both parents prior to the filing of the petition at issue here, during which father was extremely uncooperative and hostile. He also repeatedly demonstrated controlling behavior to which mother submitted. During an August 15, 2019 meeting, father "refused to allow her to speak" to the social worker and answered all the questions himself. On August 19, 2019, mother left the drug testing center with father after he instructed her not to submit to the drug test to which she had previously agreed. On August 20, 2019, father became irate and aggressive and commanded mother leave the family team meeting with him. When mother got up to leave, the Department supervisor attempted to explain the purpose of the meeting and father began yelling: "You are not taking my fucking baby out of my house." Father was asked to leave and mother was advised of her option for services without father. She responded that she needed to check with father, and left. When she returned, she stated that father would not be participating in services and that he would not be leaving the home.

Mother testified at the contested hearing and admitted she knew that father had gone to prison after fighting with the mother of one of his children because he "beat her up pretty badly." She did not, however, understand how that incident was relevant to her relationship with father. She denied telling the guardian that she was afraid of father, stating the guardian tends to lie. Mother also noted father completed a domestic violence course while in prison and claimed he had never shown aggression toward her.

4

Mother also testified that she was no longer suffering from PTSD or depression and that her past trauma no longer impacts her, as evidenced by her ability to do her daily routine, such as cleaning the house and taking care of her children when she has them. She also began working in 2018 and continues to work.

Father testified he completed a 52-week domestic violence course during his most recent incarceration. It was the third time he had completed that course. He had also completed it in connection with previous domestic violence incidents with a "really bad girlfriend" who he described as "this stupid girl."

The juvenile court found true the jurisdictional allegation related to father: that father had an anger management problem from which he has failed and/or refused to rehabilitate and which impairs his judgment and ability to provide adequate care and protection for the minor, and which places the minor at substantial risk of suffering serious physical harm.[3]

The juvenile court also found true the allegation that mother suffers from PTSD and depression, which impair her judgment and ability to provide adequate care and protection for the minor, and that mother's untreated mental illnesses place the minor at substantial risk of physical harm. In making this finding, the court relied on Hunt's 2017 mental health assessment, which we have described in pertinent part *ante*. Noting that Hunt had recommended mother participate in a psychiatric medication evaluation and counseling but mother had not followed through with that recommendation, the court observed that PTSD and depression "do not typically resolve themselves without significant intervention of the type recommended by [] Hunt" and found by a preponderance of the evidence that mother was continuing to suffer from those conditions.

---

[3] Mother does not contest the adequacy of this finding on appeal.

The juvenile court further found that mother's untreated mental health issues created a substantial risk that the minor would suffer serious physical harm. In making that finding, the juvenile court noted that the minor was reported to have hygiene concerns at detention, and that mother's and her home's hygiene were also cause for concern. The court also briefly referenced father's marijuana use and the possibility of a relapse by mother given her mental health issues.

The juvenile court ordered the minor removed from parental custody and ordered reunification services for both parents. Mother timely appealed from the dispositional hearing.

DISCUSSION

I

*Jurisdiction*

Mother challenges the sufficiency of the evidence supporting the juvenile court's findings that she suffers from PTSD and depression that impair her judgment and ability to provide adequate care and protection for the minor, that her symptoms include, but are not limited to, poor motivation, low self-esteem, feelings of hopelessness, and horrifying nightmares that cause her significant distress and make her fearful of sleeping, and that her untreated mental health illnesses place the minor at substantial risk of suffering serious physical harm. We agree the evidence is not sufficient to support these findings, and accordingly reverse the court's jurisdictional finding related to mother.[4]

---

[4] While mother does not challenge the sufficiency of the evidence to support jurisdiction based on father's ongoing anger management problems, because mother may suffer ancillary consequences from the jurisdictional finding that her unresolved mental health issues create a substantial risk to the minor's physical health and safety, we nonetheless address her argument that the evidence was insufficient to support jurisdiction on that basis. (C.f. *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 [when petition alleges multiple grounds for assertion of jurisdiction, reviewing court can affirm if any one statutory basis for jurisdiction is supported by substantial evidence].) )

6

The Department has the burden to prove jurisdiction by a preponderance of the evidence. (§ 355, subd. (a); *In re I.J.* (2013) 56 Cal.4th 766, 773; *In re Matthew S.* (1996) 41 Cal.App.4th 1311, 1318.) We review the jurisdictional finding for substantial evidence, examining the record in the light most favorable to the judgment and drawing all reasonable inferences from the evidence to support the findings and orders of the dependency court. (*In re I.J.,* at p. 773.)

As we have set forth *ante*, in making its findings regarding mother's mental health, the juvenile court relied on a report from more than two years prior that related concerns with mother's mental health *at that time*. Consideration of this report was not in and of itself problematic, but its relevance was marginal due to its age. The court also found mother's testimony that she had no current mental health issues not credible; it was well within its prerogative to do so. However, there was little to no evidence supporting the conclusion that mother was *currently* suffering from PTSD and depression "which impair her judgment and ability to provide adequate care and protection for the minor." Nor was there *any* evidence that mother was currently suffering from sadness, fatigue, irritability, poor motivation, feelings of hopelessness or nightmares.[5] While there was some evidence that mother continued to have low self-esteem, as evidenced by her codependency, this is insufficient, on its own, to establish that mother continued to suffer from PTSD and depression. Although the court observed that PTSD and depression "do not typically resolve themselves without significant intervention," that observation is not supported by any evidence presented by the parties, and accordingly we do not consider the court's observation as evidentiary support for its finding. The court's conclusion that

---

[5] Hunt noted mother was experiencing sadness, fatigue, low motivation, high irritability, and "horrifying nightmares" in the psychosocial history section of her report. She concluded that mother was experiencing clinically significant symptoms of PTSD and depression and that "[t]hese symptoms help explain her poor motivation, low self-esteem, and feelings of hopelessness." )

mother is continuing to suffer from symptoms of PTSD and depression was not adequately supported by the evidence.

Nor is there substantial evidence to demonstrate that any mental condition of mother's created a substantial risk of serious physical harm to the minor. Because the failure to protect allegation was abandoned, mother's acquiescence to father's violence and controlling tendencies was not enough to show the one remaining allegation related to mother--her mental health conditions and any risk generated *therefrom*--was supported by adequate evidence. Although the juvenile court noted concerns about hygiene and father's marijuana use, there was no evidence that these risks were serious; more importantly, there was no evidence that these concerns were related to mother's 2017 diagnosis of PTSD or depression. Nor was it alleged, or found, that these hygiene or marijuana issues were in and of themselves sufficient to form the basis for jurisdiction.

Thus there was insufficient evidence to support the allegation that there is a substantial risk that the minor will suffer serious physical harm as a result of mother's PTSD and depression, as alleged in the amended petition. Accordingly, the juvenile court's true finding as to this allegation must be reversed.

II

*Removal*

Mother contends the dispositional order removing the minor from parental custody is not supported by substantial evidence. We disagree.

Once the court has found that the minor is a person described by section 300, the minor may be removed from the parents' physical custody if the court finds clear and convincing evidence that there is or would be a substantial danger to the minor's physical health, safety, protection, or physical or emotional well-being if the minor were returned home, and there are no reasonable means by which the minor can be protected without removal. (§ 361, subd. (c).) "The jurisdictional findings are prima facie evidence that the child cannot safely remain in the home. (§ 361, subd. (c)(1).)" (*In re Cole C.* (2009)

8

174 Cal.App.4th 900, 917.) The juvenile court is required to find removal necessary by clear and convincing evidence. "When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable factfinder could have found it highly probable that the fact was true. In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.* (2020) 9 Cal 5th 989, 1011-1012.)

When the actions of one parent bring the minor within the jurisdiction of the juvenile court, the court must consider, as a reasonable means of protecting the minor, the option of removing the offending parent from the home or allowing the nonoffending parent to retain physical custody, as long as the nonoffending parent presents a plan acceptable to the court demonstrating that he or she will be able to protect the minor from future harm. (§ 361, subd. (c)(1).) These alternatives were not available here.

Although the petition was (inexplicably) amended to omit the specific jurisdictional allegation that mother had failed to protect the minor from father's anger management issues, those anger management issues alone did form a sufficient basis for removal of the minor under the applicable standard of review recited above.

The evidence established convincingly that mother remained in a long-term relationship with father and was clearly in a submissive role despite the detrimental effect her compliance with his commands had on her ability to effectively parent and protect her baby. Further, she had a history of living with dangerous men to the detriment of the safety of her children. Despite the many reports of father's aggressive and inappropriate behaviors from the social workers as well as family members, substantiated by an alarming criminal history of which mother was well aware and his current refusal to participate in services, mother had told the Department that she and the minor would

9

continue to live with father. She maintained that father did not have an anger problem and she did not understand how his previous violence or anger was relevant to her or the minor. She did not provide the juvenile court with any plan, let alone an acceptable plan, to demonstrate how she would be able to protect the minor from father's anger issues if the minor remained in her care.[6] These facts left the court with *no* evidence that mother would be able to protect the minor if the minor remained in her care, or that she would follow an order removing father from the home and limiting his contact with the minor.

In sum, father's unresolved anger management problems, combined with his refusal to participate in services, together with mother's co-dependent behavior and failure to acknowledge the need to protect the minor, was sufficient evidence to support removal of the minor from parental custody.

---

[6] Although mother asserts she was "statutorily" prevented from providing a plan demonstrating that she could keep the minor safe while she and the minor were living with father, describing her inability to be considered a nonoffending parent given the jurisdictional allegation against her, she was never prevented from challenging the removal itself by presenting a plan to keep the minor safe while in her care, and she presented no such plan. To the contrary, she refused to admit that safety was an issue or that any plan was necessary.

## DISPOSITION

The true finding on the section 300, subdivision (b)(1)-2 allegation contained in the amended petition (filed September 20, 2019) is reversed.  In all other respects, the findings and orders of the juvenile court are affirmed.


                                                             /s/
                                                   Duarte, J.


We concur:


    /s/
Hull, Acting P. J.


    /s/
Murray, J.